# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

DONALD E. MITCHELL, JR.,

Plaintiff,

v.

NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,

Defendants.

Case No. 2:16-cv-00037-RFB-NJK

**ORDER**

**I. INTRODUCTION**

This case is before the Court on Defendants Timothy Filson ("Filson") and Miguel Flores-Nava ("Flores-Nava") (collectively, "Defendants")' Motion for Summary Judgment (ECF No. 65), and Plaintiff Donald E. Mitchell, Jr. ("Plaintiff")'s Motion for Appointment of Counsel (ECF No. 67). For the reasons stated below, Defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiff's Motion for Appointment of counsel is denied.

**II. PROCEDURAL BACKGROUND**

On October 23, 2015, Plaintiff filed this action in state court alleging Fourteenth Amendment and First Amendment violations. (ECF No. 1-2). Defendants removed the case to this Court on January 8, 2016. (ECF No. 1). Magistrate Judge Nancy J. Koppe entered a Screening Order on June 22, 2016. (ECF No. 14). The Court dismissed the Fourteenth Amendment claim without prejudice and with leave to amend, and dismissed Defendants Neven and Foster without prejudice and with leave to amend. The Court also provided Plaintiff thirty days to file an Amended Complaint.

On July 12, 2016, Plaintiff filed his Amended Complaint, alleging the following two counts: (1) First Amendment retaliation; and (2) violation of the First Amendment right to file grievances. (ECF No. 15). The Court entered a Screening Order on October 5, 2016, dismissing Count Two with prejudice. (ECF No. 21). The parties were also directed to participate in inmate early mediation. An inmate early mediation conference was held on January 13, 2017; a settlement was not reached and the case was returned to the normal litigation track. (ECF No. 30).

Defendants filed their Answer to the Amended Complaint on March 23, 2017. (ECF No. 34). Plaintiff filed a Response on April 12, 2017. (ECF No. 37). On September 25, 2017, Defendants filed the instant Motion for Summary Judgment. (ECF No. 65). Plaintiff filed his Response on October 11, 2017. (ECF No. 70). Defendants filed their Reply on November 6, 2017. (ECF No. 73). Plaintiff filed a Motion for Appointment of Counsel on September 29, 2017. (ECF No. 67). Defendants filed a Response on October 12, 2017. (ECF No. 69). Plaintiff filed a Reply on November 6, 2017. (ECF No. 75). The Court held a hearing on the motions on July 3, 2018 and took the matter under submission.

### III. UNDISPUTED FACTS

The Court finds the following facts to be undisputed. On September 25, 2014, Plaintiff and another inmate were housed in Unit 12 Cell C4. That day, Defendant Flores-Nava, a Senior Correctional Officer, conducted a cell search of Plaintiff's cell. With Flores-Nava was another Correctional Officer, Betterly. Plaintiff was removed from the location of the cell search. During the search, Flores-Nava discovered contraband in the form of tattooing equipment.

Following the discovery of contraband in the cell, Flores-Nava conducted a non-physical, partially clothed body search of Plaintiff and his cellmate. Flores-Nava conducted the body search of Plaintiff and his cellmate in the activity room, an area with no cameras and out of the view of others. After the body search was completed, Flores-Nava issued Plaintiff a Notice of Charges for "Possession of contraband" and "Tattooing or Poss[essing] Tat[tooing] Device."

On September 28, 2014, Plaintiff filed a grievance regarding Flores-Nava's partially unclothed body search. This grievance was properly exhausted through the grievance process.

On September 29, 2014, Plaintiff also filed a Prison Rape Elimination Act ("PREA") complaint against Flores-Nava. The PREA investigators interviewed Plaintiff's cellmate on February 26, 2015, and also separately interviewed Plaintiff and Flores-Nava on February 27, 2015. and concluded that "Operational Procedures were followed during the cell search and the unclothed body search" and recommended closure of the case.

On October 6, 2014, Plaintiff was moved to the same housing unit where Flores-Nava was assigned. Plaintiff filed an Emergency Grievance, in which he claimed that he feared retaliation from Flores-Nava. The Emergency Grievance was denied the same day on the grounds that there was no emergency, and Plaintiff was directed to file an informal grievance or speak with his caseworker.

On October 18, 2014, a hearing was held regarding the Notice of Charges for tattooing contraband. Plaintiff was found not guilty on both charges.

On November 14, 2014, Plaintiff filed an informal grievance alleging harassment by Flores-Nava regarding an untucked shirt. In the grievance, Plaintiff claims that after he returned from religious services that day, he was told by the control unit officer to "roll [his] property up" as he would be moving from Unit 10 to Unit 12. Plaintiff wrote that this was retaliation by Flores-Nava, as there were other inmates with untucked shirts and Flores-Nava did not say anything to them about having shirts tucked in before leaving the unit. He stated in the grievance that he was seeking monetary compensation. The same day, Plaintiff filed another informal grievance alleging retaliation by Flores-Nava in the form of being moved to another unit because Flores-Nava "was out to retaliate against [Plaintiff]" for filing grievances and a PREA complaint regarding the body search on September 25, 2014.

On December 2, 2014, Defendant Filson sent a memorandum to Plaintiff with the subject "Improper Grievance 2006-29-89392 IF Level Grievance." According to the memorandum, Plaintiff's November 14, 2014 grievance regarding the untucked shirt was being returned to him because Plaintiff did not submit a Form DOC-3096, Administrative Claim Release Agreement. Plaintiff was directed to resubmit the grievance at the informal level with the DOC-3096 attached.

Plaintiff signed this memorandum, however, he did not resubmit his grievance with the DOC-3096.

On January 20, 2015, Defendant Filson sent a memorandum to Plaintiff with the subject "Improper Grievance 2006-29-89391 IF Level Grievance." According to the memorandum, Plaintiff's November 14, 2014 grievance regarding the unit move was being returned to him because it contained more than one incident or issue. Plaintiff was directed to resubmit an Informal Grievance Form DOC 3091 for each issue to be grieved. Plaintiff signed this memorandum but did not resubmit separate grievance forms.

Nevada Department of Corrections ("NDOC") Operating Procedure ("OP") 409, "Institutional Search and Control of Contraband," governs the procedures for cell searches and body searches. OP 409.02 governs body searches. OP 409.02(1) provides: "Unclothed body searches are based on a reasonable belief that the inmate is carrying contraband or other prohibited material." OP 409.02(4) provides: "All unclothed body searches of inmates shall be conducted 'in an area out of view of others' if at all possible." OP 409.03 governs cell searches, and OP 409.04 governs cell searches in lockup / lockdown units. OP 409.04 specifies a procedure for conducting an unclothed body search during a cell search when units are on lockdown. NDOC Administrative Regulation ("AR") 422 provides additional standards for searches and seizures.

**IV. DISPUTED FACTS**

The parties dispute the timing of the sequence of events on September 25, 2014. Specifically, the parties dispute whether the partially unclothed body search occurred before or after Plaintiff requested an informal grievance form from Flores-Nava.

The parties further dispute whether Flores-Nava told Plaintiff to take off his underwear during the body search, whether Flores-Nava flashed his flashlight back and forth from Plaintiff's penis to his cellmate's penis in a provocative manner, and whether Flores-Nava told Plaintiff that Plaintiff would receive a Notice of Charges for failing to take off his underwear during the body search.

The parties also dispute whether the cell search was performed in accordance with NDOC AR 422, which governs searches and seizures, and provides that "[w]henever practical and where there is no undue risk to the officers or employees conducting the search, the person or inmate to be searched will remain within view of the property being searched." AR 422.01(6).

The parties dispute whether Flores-Nava told Plaintiff that Plaintiff would be moved to a different unit after Plaintiff's September 2014 grievances.

**V. LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (citation and quotation marks omitted). A genuine issue exists, precluding summary judgment, as long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**VI. DISCUSSION**

    **A. Defendants' Motion for Summary Judgment**

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2004). "Without

those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Id. To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68.

The Court may consider the timing of an allegedly retaliatory action as circumstantial evidence of retaliatory intent, particularly where a punishment comes soon after an inmate plaintiff airs a grievance. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (citing Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)).

A defendant may prevail on a First Amendment retaliation claim on the defense of qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2017) (citation and quotation marks omitted). The doctrine "ensures that 'officers are on notice their conduct is unlawful' before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).

The qualified immunity inquiry has two prongs: "(1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific case." Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). While the two prongs will often be decided in order, courts have discretion to decide which of the prongs should be addressed first according to the circumstances of the individual case. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In order for a right to be clearly

established, "existing precedent must have placed the statutory or constitutional question beyond debate." White, 137 S. Ct. at 551 (citation and quotation marks omitted).

### 1. *Defendant Flores-Nava*

Flores-Nava argues that Plaintiff cannot establish a First Amendment retaliation claim with regard to the cell and body searches that took place on September 25, 2014. First, he contends that a non-physical, partially clothed body search is not an adverse action and would not chill a person of ordinary firmness. These types of searches are part of routine prison life. Additionally, Flores-Nava argues that Plaintiff cannot prove causation. The body search was not done because of Plaintiff's request for a grievance, but rather because there was reasonable belief of contraband (a prison tattoo) pursuant to OP 409.02. Regardless of whether Plaintiff requested a grievance, Flores-Nava would have taken the same actions. Flores-Nava additionally contends that the body search served a legitimate correctional goal. He conducted a routine search of Plaintiff's cell and discovered contraband. A body search was therefore necessary to prevent the spread of infection and disease inside the prison. Additionally, controlling contraband within a prison is a legitimate penological interest. Flores-Nava relies upon the conclusion of the PREA investigators, which upheld the cell and body searches.

Flores-Nava also argues that Plaintiff's claim fails with regard to the incidents that were the subject of Plaintiff's grievances on November 14, 2014. Flores-Nava first contends that Plaintiff failed to exhaust administrative remedies, as his grievances were returned to him for failure to include certain documentation, and Plaintiff never resubmitted those grievances. As to the substance of the claim, Flores-Nava argues that verbal harassment is not an adverse action, and discussion between inmates and correctional officers is a normal part of prison life. In addition, Plaintiff does not show that he engaged in any protected conduct. The filing of the grievance was done after Flores-Nava spoke to Plaintiff about his untucked shirt. Flores-Nava also argues that the conversation about the untucked shirt served a legitimate penological purpose – to ensure the safety and security of the prison by distinguishing between inmates and employees and also protecting inmates from the harsh desert elements. Also, prison rules require blue jeans and a blue shirt for chapel and Plaintiff admitted he was not in compliance and was not wearing a blue shirt.

As to the events on September 25, 2014, Plaintiff counters that Flores-Nava retaliated against him by taking him and his cellmate into the activity room where they would be out of view of cameras and ordered the inmates to take their clothing off, only after Plaintiff asked for a grievance due to the cell search violating prison regulations. Plaintiff contends that he requested the grievance because he believed that Flores-Nava was not conducting the cell search in accordance with NDOC Administrative Regulation 422, which requires an inmate to be within view of the property being searched whenever practical. Plaintiff argues that he was told that he would receive a Notice of Charges for failing to take his underwear off during the search, although he ultimately did not receive a Notice of Charges in that regard. Plaintiff also argues that he was further retaliated against when Flores-Nava issued him a false Notice of Charges regarding tattooing contraband that was ultimately dismissed. Plaintiff relies on his informal grievance, his Amended Complaint, and a disciplinary hearing form dated October 18, 2014 which showed that Plaintiff was found not guilty of the possession of contraband and tattooing device charges. Plaintiff additionally contends that the unit was on lockdown at the time of the September 25, 2014 searches, which required Flores-Nava to follow an alternative procedure for cell and body searches. His informal grievance, dated September 28, 2014, supports his statement that the cell was on lockdown at the time of the searches.

With regard to his November 14, 2014 grievances, Plaintiff argues that he was verbally harassed by Flores-Nava about his untucked shirt and moved to a different cell at Flores-Nava's direction because of his earlier filed grievances against Flores-Nava. Plaintiff also contends that he was further retaliated against when Flores-Nava searched his cell twice on January 29, 2015. In Plaintiff's view, an ordinary person would have been chilled from filing grievances due to this series of retaliatory actions.

The Court finds that there is a genuine dispute of fact regarding the alleged retaliation as a result of Plaintiff's request for a grievance on September 25, 2014. The parties dispute whether Plaintiff requested a grievance before the partially unclothed body search, for Flores-Nava's alleged failure to adhere to AR 422. This fact is material, as it may provide circumstantial evidence of Flores-Nava's intent. Flores-Nava's intent in engaging in the search is relevant to establishing

whether the body search was performed because of the request for a grievance. The Court finds that the undisputed facts show that there was no requirement for Defendant Flores-Nava to engage in this type of body search based on the circumstances surrounding the cell search. The Court does not read OP 409.02 to require an unclothed or partially unclothed body search in all circumstances where there is reasonable belief of contraband. Rather, the language is discretionary – a reasonable juror could find that Flores-Nava's performance of the unclothed body search of Plaintiff was not part of a regular pattern or practice and did not reasonably advance a legitimate penological purpose. Further, Plaintiff argues that there was a lockdown on the day of the search, which required a cell search, including an unclothed body search, to be performed pursuant to OP 409.03(10) and OP 409.04. Flores-Nava does not dispute this. This undisputed fact suggests that there may have been an alternative procedure for performing the search that would have advanced a legitimate penological goal without chilling Plaintiff's exercise of his First Amendment rights. Therefore, the question of whether Plaintiff requested a grievance before Flores-Nava conducted the body search is properly left to the jury.

However, the Court finds that Flores-Nava is entitled to summary judgment with regard to the grievances filed on November 14, 2014. Plaintiff does not dispute that he failed to resubmit his grievances in accordance with the directions provided with his returned forms. Even if Plaintiff had exhausted administrative procedures, the Court finds that Plaintiff does not provide evidence which contradicts Flores-Nava's argument that he is a correctional officer with no authority or responsibility for inmate housing. The Court also finds that there is no dispute that the conversation about an untucked shirt served a legitimate penological purpose, as the institution has rules in place requiring inmates to tuck in their shirts. Given that legitimate penological purpose, the fact that Plaintiff does not allege any harm directly flowing from the conversation, and the fact that the conversation occurred nearly two months after the September 25, 2014 searches, the Court finds that summary judgment in favor of Flores-Nava on these issues is warranted.

### 2. *Defendant Filson*

Defendant Filson argues that, with regard to Plaintiff's First Amendment retaliation claim, the responses Filson provided to Plaintiff's grievances, on December 2, 2014 and January 20,

2015, do not give rise to Section 1983 liability. As the remaining substantive claims against him are dismissed, Filson contends he is entitled to summary judgment. Plaintiff argues in his Response that he made continuous attempts to refile his grievances after receiving Filson's rejections, but Filson continued to chill Plaintiff's First Amendment right and reject his grievances. Plaintiff does not include evidence of these subsequent grievances or provide any details about subsequent attempts to refile those grievances. Plaintiff also contends that Filson made threats which caused Plaintiff to be in fear of pursuing his claim, and cites to Filson's responses to Requests for Admissions. However, the requests for admission do not demonstrate that Filson used any threatening language against Plaintiff.

The Court finds that Filson is entitled to summary judgment. Plaintiff does not provide any evidence of a genuine dispute of fact as to Filson's involvement. The undisputed facts show that Plaintiff's grievances were returned to him because he did not fill out certain forms or follow proper procedures, and he was given the opportunity to resubmit those forms. Plaintiff does not present any dispute supported by evidence regarding his attempt to resubmit his denied grievances. Plaintiff also does not provide any evidence that Filson threatened him or otherwise took any retaliatory action; the denial of grievances alone is not sufficient to establish a claim for retaliation.

### 3. *Arguments as to Count Two of the Amended Complaint*

Plaintiff and Defendant Filson raise arguments related to Count Two in their briefs. The Court disregards the arguments regarding Plaintiff and Filson's interaction on November 19, 2014, as well as the arguments regarding Plaintiff's filing of an inmate request form on January 29, 2015, as Count Two was dismissed with prejudice in the Court's Screening Order.

### 4. *Qualified Immunity*

Both Defendants argue that they are entitled to qualified immunity. They argue that the Court should not find any constitutional violation was committed. Defendants further contend that, even if a constitutional violation occurred, it is not clearly established that conducting a body search according to policy or speaking to an inmate about his sloppy appearance are constitutional violations. In response, Plaintiff argues that Defendants are not entitled to qualified immunity

because the prohibition against retaliation is clearly established law, and there is at least a genuine dispute about Defendants' motivation.

The Court finds Plaintiff's argument persuasive. It is well-established in the Ninth Circuit that, for the purposes of analyzing a qualified immunity defense, retaliation against a prisoner for exercising her First Amendment rights is clearly established law. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005) (citing Pratt v. Rowland, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)). Because there is a genuine dispute as to Flores-Nava's motivation for performing Plaintiff's body search, which cannot be resolved at this point, qualified immunity cannot be applied at this stage. A reasonable juror could find that Flores-Nava conducted the body search in retaliation for Plaintiff requesting a grievance; even if Flores-Nava conducted the search pursuant to NDOC policy – which arguably appears not to be the case, given Plaintiff's undisputed contention that the unit was on lockdown at the time of the unclothed body search – the timing of the search and the context in which it was performed could potentially chill a person of ordinary firmness, even if that individual is expected to endure somewhat harsher conditions than a person that is not incarcerated.

As Defendant Filson is entitled to summary judgment for the reasons discussed above, the Court need not discuss his potential qualified immunity defense.

**B.     Plaintiff's Motion for Appointment of Counsel**

Plaintiff argues that Defendants did not properly respond to Plaintiff's discovery requests of April 27, 2017 and May 25, 2017. Plaintiff also argues that his case presents extraordinary circumstances which merit the appointment of counsel. These extraordinary circumstances are Defendants' denial of Plaintiff's access to discovery. He also discusses difficulty getting access to the law library. Defendants attach to their Response law library logs which show that Plaintiff did not appear to his law library appointments. Defendants also argue that Plaintiff's claims are not so complex as to merit the appointment of counsel. Defendants contend that the discovery Plaintiff seeks has little bearing on his opposition to their Motion for Summary Judgment. Defendants list the discovery requests in Plaintiff's prior motions to compel, and state that responses have already been provided to Plaintiff.

The Court has already denied Plaintiff's request for appointment of counsel in its first screening order (ECF No. 14), and the Court does not find that any intervening extraordinary circumstances have occurred such that appointment of counsel is warranted. While the Court recognizes that Plaintiff has provided a reason for his inability to attend his law library appointments, the Court finds that he has demonstrated a sufficient ability to prosecute his case. Several missed law library appointments do not constitute the extreme circumstances necessary for the appointment of counsel.

The Court also denies Plaintiff's request to reopen discovery, as the disputes of fact which are going forward to trial do not require further discovery. The Court does not find that the record shows Defendants have engaged in any inappropriate discovery conduct. However, the Court orders Defendant Flores-Nava to produce *in camera* any grievances filed by inmates that involve First Amendment retaliation as well as any disciplinary actions taken against Flores-Nava regarding those types of grievances. Flores-Nava may also simultaneously submit a brief on the issue of whether those documents are relevant for Plaintiff's surviving claim.

## VII. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 65) is GRANTED IN PART and DENIED IN PART. Defendant Filson is dismissed from the case. The claims against Flores-Nava related to any actions taken after September 25, 2014 are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 67) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Flores-Nava submit for *in camera* review any and all documents related to the filing of grievances against him based on claims of First Amendment retaliation, as well as any briefing on the issue of whether those documents are relevant for trial, **within thirty days** of the date of entry of this Order.

/ / /

/ / /

**IT IS FURTHER ORDERED** that the parties are referred to the Magistrate Judge for the purposes of setting a Settlement Conference.

DATED: July 10, 2018.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**